### BUNKER and others *v.* STEVENS.[1]

(*Circuit Court, D. New Jersey.* December 11, 1885.)

1. PATENTS FOR INVENTIONS—AGREEMENT TO ASSIGN FUTURE IMPROVEMENTS.

C. & C. contracted with S. to give him the refusal of the purchase of a patent, at any time within a year, for a stipulated price, and, as a consideration for this option, S. agreed that, if he did not so purchase, he would assign to C. & C. any and all improvements upon or relating to the invention described and shown in the patent, which he might make or patent. He elected not to purchase, but refused to assign his improvements claimed to be within the contract, whereupon this bill for a specific performance was filed against him.

[1]Reported by Charles C. Linthicum, Esq., of the Chicago bar.

*Held,* that the contract only contemplated and covered improvements made within the year therein specified.

**2. SAME—CONSTRUCTION OF PATENT—ROCKING AND TILTING CHAIRS.**

The distinction between a tilting and a rocking chair—that the former takes its motion from a single point or pivot, and the latter from an axis which is continually changing—recognized as "a well-defined difference" between them; and the M. D. Connolly patent of December 19, 1876, construed, and *held* to cover a tilting-chair, whose seat and occupant are supported by a central spiral spring, interposed between and connecting the upper and lower parts, but not a chair in which the weight of the occupant is sustained by rockers resting on base supports.

**3. PRACTICE—COSTS, WHEN ALLOWED.**

Costs are always awarded to the successful party, unless there has been something in his conduct which renders such a course inequitable and unjust to the losing side.

**4. SAME—COSTS REFUSED ON ACCOUNT OF DEFENDANT'S CONDUCT.**

In this case the defendant had written various letters, in the hope of an advantageous business arrangement, suggesting that his improvements, patented and unpatented, related to the Connolly patent, which induced the complainant to purchase the interest of C. & C. in the contract; but he afterwards assumed a different ground. *Held,* in view of these letters, so written and acted on, that he should not be allowed to recover costs.

In Equity.

*Banning & Banning,* for complainants.

*J. E. Maynadier,* for defendant.

NIXON, J. On December 19, 1876, letters patent No. 185,501 were issued by the patent-office to M. Daniel Connolly and Thomas A. Connolly, for improvements in tilting-chairs. One Asher B. Stevens, being desirous of manufacturing, at his own risk and expense, for a limited period of time, the improvements shown and described in said letters patent, and also of securing the right or option of purchasing the same within such limited period, at a stipulated price, afterwards, to-wit, on the twenty-sixth of August, 1879, entered into an agreement with the patentees to the following effect:

(1) That the Connollys should license and empower Stevens to manufacture and sell, within the period of one year from the date of the agreement, at his own risk, cost, and expense, the improvements described and claimed in said letters patent, for the purpose of testing their salability, and the feasibility of their introduction to the public; and to enable him to recompense himself for the expense incurred in manufacturing and introducing the said improvements, they granted to him the right, within the said period, to make and sell 500 chair-tilts, embodying the said improvements, free from all royalty or license fee; but upon every tilt above the number of 500, the royalty or license fee due and payable should be 15 cents each, payable monthly. The said Connollys gave to Stevens the refusal of the purchase of the said letters patent, at any time within the one year, at the stipulated price of $1,000. (2) And the said Stevens agreed to have immediately manufactured, at his own cost and expense, a sufficient number of complete tilts, embodying the patented improvements, to test their salability, and to pay the said royalty of 15 cents for every tilt manufactured by him above 500, and further covenanted that if he did not purchase and pay for the said letters patent within one year from the date of the agreement, as before provided, he would, at the expiration of the year, cease from the manufacture of said tilts, and would turn over and surrender promptly to the Connollys all patterns gotten up by him for the manufacture of tilts, embracing the said

improvements, and would assign to them the entire right, title, and interest in any and all improvements upon the invention shown and described in said letters patent, or relating thereto, which he might make or patent.

On the sixth day of June, 1884, the Connollys assigned unto the above-named complainants, and their legal representatives, the said agreement, and all manner of right, interest, benefit, and advantage whatsoever of the said Connollys thereunder, together with the right of suit or action in respect of the same, and all the rights and powers whatsoever necessary or incidental thereto.

The bill of complaint, filed in this case, requires the defendant to fully disclose, but not under oath, "the number, nature, and extent and details of the various improvements in spring attachments included in and by the said agreement with the Connollys, and, where applications for patents have been made, to authorize the commissioner of patents to furnish complainants with copies of the same, to account with and pay to the complainants all the gains, savings, and profits which he has made or realized from the manufacture and sale of the improvements included in said agreement, together with all the damages sustained by complainants from his unlawful acts; to execute to complainants good and sufficient assignments or conveyances of certain letters patent No. 273,630, issued to the defendant, March 3, 1883, the application serial No. 11,702, now pending, the four other applications pending, and the two applications in preparation,—all mentioned in defendant's letter to complainants of March 31, 1884,—and any and all other improvements, patents, and applications embraced within the letter and spirit of said agreement; and that he may be enjoined from making or selling, through himself or others, any improvements upon the invention shown and described in the said Connolly patent of 1876, or relating thereto; and from selling, assigning, mortgaging, or otherwise incumbering any of said improvements; and from making any contracts or granting any licenses in relation thereto, and abandoning or otherwise throwing the same upon the public, or doing anything to impair or destroy their value, or impede, damage, or injure the complainants in the possession, enjoyment, exercise, or use of the said improvements."

The defendant's answer is brief. Annexing thereto a copy of the contract set forth in the bill of complaint, he admits that he duly executed the same, and alleges that, shortly before the expiration of one year from its date, he notified the Connollys that he did not wish to purchase the patent, and that he was ready and willing to fulfill all his obligations to them arising under the said contract; that thereupon there arose a dispute between them as to what the defendant was bound to do under its terms, the Connollys insisting that he was obliged to assign to them certain inventions which defendant claimed were not within the contract; and that he has ever been and is still ready to do and perform every act and thing lawfully required of him thereunder.

The present controversy arises from the failure of the defendant, at the end of the year, to assign and set over to the complainants certain improvements which it is alleged he had made during the year, and since, upon the invention shown and described in and relating to the Connelly patent, and it is to be determined by the consideration of three questions: (1) What is the meaning of the contract? (2) What is the true construction of the Connolly patent? (3) What are the improvements or inventions of Stevens, which the complainants claim?

1. It was insisted by the counsel of complainants, at the hearing, that the proper interpretation of the agreement gave to the complainants not only the patterns and the improvements upon the invention shown and described in the Connolly patent, which Stevens made or patented during the year, but also all improvements that he should make or patent after the expiration of the year. I cannot assent to this construction. The fair import of the language used is that only those improvements should become the property of the complainants which were made upon the invention or patented before the termination of the contract.

2. The Connolly patent is for an improvement in tilting-chairs, as contradistinguished from rocking-chairs. There is a well-defined difference between them. The former take their motion from a single point or pivot, and the latter from an axis, which is continually changing. The patentee in his specification says that the essence of his invention consists in the application or employment of a spiral spring in such a manner that it will afford a support to the seat; being compressed, wholly or in part, when the seat is occupied, and opening or expanding on one side when the latter is tilted or rocked. He further states that his "invention does not consist in the construction of the spring, but rather in its combination and arrangement, together with means of preventing tilting in undesirable directions. Hence the first and characteristic claim of the patent is for a tilting-chair, having its seat and base connected through the medium of a spiral spring, which constitutes the only intermediate connection and support between the seat parts and the base parts; said spring being arranged with its longitudinal axis in a vertical line, so as to permit the seat to yield and tilt, substantially as shown and described." Assuming that the patentee knew what he had invented, we find no support, in their specifications, to the broad claim of the complainants' counsel, on the argument at the hearing, that the patent covers all chairs which have a short, broad, stiff, spiral spring. In view of the state of the art, and of patents previously granted, to give it such a construction would probably render it invalid. It undoubtedly includes a chair whose seat and occupant are supported by a central spiral spring interposed between the seat frame and the base; the said spring connecting the parts together by having its respective ends securely fastened; but not a chair where the weight of the occupant

is sustained by rockers, and where the only function of the spring is to impart the tilting motion. There is no hint in the patent that the inventor had in his mind the application of the spiral spring to a base-rocking chair, or that his object was to make any improvement upon such chairs. His whole thought seems to have been engrossed in improving tilting-chairs.

3. With this construction of the complainants' Connolly patent, it follows that the inventions which the defendant has patented, or filed applications for patents, are not improvements upon the invention shown and described in the Connolly patent, nor do they relate thereto. They refer to improvements upon chairs with a base and rocker, where the weight of the occupant is supported by the rocker, and not upon tilting-chairs where the support is derived from the spring. In the hundreds of patents issued for all sorts of devices to be applied to tilting and rocking chairs, it is quite difficult to determine what is new and what is old; but there are two classes clearly defined, the tilting and the rocking, and the complainants' patent belongs to the first class, and the defendant's improvements to the second. From the evidence in the case, I am not willing to find that the defendant has not always tendered himself willing to comply with his covenants in the agreement, and the bill of the complainants must be dismissed.

I have doubts about the question of costs. They are always awarded to the successful side, unless there has been something in the conduct of the party which renders such a course inequitable and unjust to the losing side. The letters of the defendant, exhibited in the testimony, have made a very unfavorable impression on my mind. In his correspondence with the complainants, before they acquired an interest in the contract, these letters were certainly suggestive that his improvements, patented and unpatented, belonged to the Connolly patent. He was then hoping to make an advantageous business arrangement with the complainants. It is true that after these negotiations failed, and the complainants, induced probably by his previous statements, had purchased the interest of the Connollys in the contract, he assumed a different ground; but, under the circumstances, he ought not to be allowed costs, and the decree of dismissal will not carry costs.